NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0856n.06

Case No. 14-5250

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 14, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| RANDY MOSS, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, SUTTON, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge. Defendant Randy Moss appeals the district court's sentence of 120 months for participation in a drug trafficking conspiracy. For the reasons stated below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2013, twenty-two individuals, including Moss, were indicted for conspiracy to distribute and possess with intent to distribute hydrocodone, in violation of 21 U.S.C. § 846. Moss pleaded guilty to the charge in accordance with a written plea agreement.

The Presentence Report assigned Moss a base offense level of 30 and a criminal history category of VI. The base offense level was premised on a finding that Moss was responsible for the distribution of at least 181,440 hydrocodone pills and 3,024 oxycodone pills. Moss filed a pre-sentencing position paper in which he objected to the calculated base offense level. He

denied distributing any oxycodone pills and argued that he was only responsible for the distribution of 40,000 to 50,000 hydrocodone pills.

At the sentencing hearing, the Government presented testimony from co-defendants Tiffany Jones and Jason Hopkins, both of whom had previously made proffer statements to government agents. Jones testified that, as part of the conspiracy, she would travel to out-of-state pharmacies three times a month, obtaining between 500 and 1500 pills on each occasion. Jones then sold eighty percent of those pills to Moss. This pattern persisted for roughly a year. Jones testified that, during the course of the conspiracy, the drug trafficking organization obtained between 100,000 and 400,000 hydrocodone pills.

Hopkins testified that, as part of the conspiracy, he made three or four trips a month to obtain hydrocodone from 2010 to 2013. On each trip, he would obtain between 200 and 2000 pills. Beginning in 2011, Hopkins sold at least half of his supply of hydrocodone to Moss. In 2012, Hopkins began selling oxycodone pills to Moss. Hopkins testified that he was able to obtain between 120 and 360 oxycodone pills each month and that he sold roughly a hundred pills to Moss on five different occasions in 2012. In total, Hopkins estimated that he sold Moss 700 or 800 oxycodone pills and 100,000 hydrocodone pills.

Hopkins also testified that Moss was dealing with co-defendant Bradford Kelley at least as far back as 2011. Kelley made three or four trips a month to obtain hydrocodone and sold half of his supply to Moss.

Michael Jackson, the Memphis police officer who served as the case agent, testified that Kelley ran the drug trafficking organization from jail after Kelley was incarcerated in August 2012. Investigators recorded Kelley's phone calls from the jail, and during at least one of those calls, Kelley discussed oxycodone with Moss. Drawing upon his knowledge of proffer sessions

with Hopkins and Jones, Jackson corroborated their testimony about their hydrocodone and oxycodone sales to Moss.

After testimony had concluded, the Government agreed to stipulate to a reduced number of hydrocodone pills and oxycodone pills that would better reflect the amounts provided during testimony. The new proposed calculations charged Moss with 133,840 hydrocodone pills and 1,600 oxycodone pills, giving him a base offense level of 26. Moss agreed to the Government's new figures and withdrew his objection as to his alleged conduct involving oxycodone. Moss then made a brief statement directly to the court acknowledging his role in oxycodone dealing. The court then granted a two-level reduction for acceptance of responsibility, but the Government refused to make a motion for an additional one-level reduction. As a result, Moss was assigned an adjusted total offense level of 24 and a criminal history category of VI, with a Guidelines sentencing range of 100 to 120 months.

In sentencing Moss, the district court made a comprehensive account of the factors outlined in 18 U.S.C. § 3553(a). It indicated that it was constrained by the statutory maximum of 120 months. It described the sentence as "insufficient to deal with the significant involvement of Mr. Moss given his entire history" and "barely provid[ing] adequate punishment for his activities."

## DISCUSSION

We review a district court's final sentencing determination for "reasonableness under a deferential abuse of discretion standard." *United States v. Cochrane*, 702 F.3d 334, 343 (6th Cir. 2012) (citing *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)). Moss only challenges the substantive reasonableness of the sentence. He does not argue that the sentence was selected arbitrarily or based on impermissible factors. Instead he argues that the district court failed to

consider two issues that Moss characterizes as "non-statutory mitigating factors": the absence of an indictment against Moss for possession or distribution of oxycodone and the Government's failure to produce in discovery its evidence about Moss's involvement in the possession and distribution of oxycodone.

## I. Moss's Indictment

The applicable guideline for Moss's crime of conviction, USSG § 2D1.1, provides for a range of base offense levels depending on, among other factors, the quantity of drugs involved. Section 1B1.3(a) of the Guidelines states: "Unless otherwise specified, . . . the base offense level where the guideline specifies more than one base offense level . . . shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." An application note adds that, "With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved . . . ." USSG § 1B1.3 cmt. n. 2.

Moss has attempted to frame the absence of a specific indictment for conspiracy to possess and distribute oxycodone as a "non-statutory mitigating factor" that affects his sentence and is thus part of a challenge for substantive reasonableness. However, the commentary to the Sentencing Guidelines explicitly states that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." USSG § 2D1.1, cmt. n.5 (citing USSG § 1B1.3(a)(2)). This commentary, which is authoritative, *see Stinson v. United States*, 508 U.S. 36, 42-43 (1993), makes it clear that the aggregation of quantities of an indicted drug type together with quantities of an unindicted drug type is part of the sentencing process. Therefore, it cannot be presented as a mitigating factor that the district court was obliged to consider, and the district court did not abuse its discretion by refusing to consider it.

The district court's sentencing decision was in no way substantively unreasonable. The court did not fail to consider relevant § 3553(a) factors—on the contrary, it was scrupulous in its efforts to review all the factors, even those that had little or no impact on the final sentence. It did not rely on any impermissible factors, and there is no suggestion that it placed an unreasonable emphasis on any permissible factors.

## II. Moss's Inability to Obtain Proffer Statements Through Discovery

At sentencing, Moss's counsel stated that, prior to the sentencing hearing, he did not have information that indicated Moss's involvement in the distribution of oxycodone. This statement was partially contradicted by counsel's knowledge of a phone call between Moss and Kelley discussing a theft of oxycodone from Moss and Moss's subsequent efforts to retrieve his property. Counsel's main concern appears to have been his inability to review the proffer statements of Jones and Hopkins, because as he put it, "[M]y clients don't have the benefit of proffered testimony regarding certain things and the right to confront those individuals that have . . . rendered proffered testimony."

On appeal, Moss does not point to any law or procedural rule that would entitle him to discovery of the Jones and Hopkins proffer statements. That omission is not surprising. 18 U.S.C. § 3500(a) provides that:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

Any disadvantage that accrued to Moss is the result of a generally applicable statute addressing criminal procedure. It is not, therefore, a mitigating factor, let alone the sort of factor that the sentencing judge was obliged to consider under 18 U.S.C. § 3553(a).

AFFIRMED.